# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. S.,[1]<br>        **Plaintiff,**<br>   v.<br>ANDREW M. SAUL, Commissioner of Social Security,<br>        **Defendant.** | NO. CV 18-5901-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff filed a Complaint on July 6, 2018, seeking review of the denial of his application for a period of disability and disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 8, 10.) On April 1, 2019, the parties filed a Joint Stipulation. (Dkt. No. 20 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision with either an award of

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

disability benefits or a remand of the case for further administrative proceedings. (Joint Stip. at 29.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, that the matter be remanded for further administrative proceedings. (*Id.*) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On September 10, 2014, Plaintiff filed an application for a period of disability and DIB. (Administrative Record ("AR") 12, 168-71.) Plaintiff alleged disability beginning on July 3, 2013 due to "multiple back, spine and nerve injury" and further alleged that the "injury affects upper and lower extremities and neck."[2] (AR 85, 95.) After the Commissioner denied Plaintiff's application initially (AR 84) and on reconsideration (AR 94), Plaintiff requested a hearing (AR 122).

At a hearing held on November 29, 2016, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert. (AR 38-83.) On June 16, 2017, the ALJ issued an unfavorable decision denying Plaintiff's application for a period of disability and DIB. (AR 12-28.) On May 11, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ initially found that Plaintiff met the insured status requirements through December 31, 2018. (AR 14; *see* 20 C.F.R. § 404.1520.) The ALJ found at step one that Plaintiff had not engaged in substantial

---

[2] Plaintiff was 50 years old on his alleged disability onset date (AR 618) and thus met the agency's definition of a person closely approaching advanced age. *See* 20 C.F.R. § 404.1563(d).

2

gainful activity since his alleged onset date of July 3, 2013. (AR 14.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and degenerative disc disease of the cervical spine. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 17.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [Plaintiff] is unable to climb ladders, ropes, scaffolds, and unable to perform all other postural activities on more than an occasional basis. Further, [Plaintiff] is unable to work around unprotected heights, moving mechanical parts, or vibration.

(AR 18) (footnote omitted). At step four, the ALJ found that Plaintiff could perform his past relevant work as a senior project manager, as generally performed in the national economy. (AR 27.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 28.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISCUSSION**

The parties raise three issues: (1) whether the ALJ "failed to give proper weight to treating physicians and to Plaintiff's subjective pain testimony, and failed to support his reliance on the opinion of the non-treating, non-examining State Agency consultants"; (2) whether the ALJ's "adverse credibility finding is legally and factually inadequate"; and

(3) whether the ALJ "failed to support his finding that Plaintiff could perform his past relevant work, or any other full-time work." (Joint Stip. at 3-4.)

I. **The ALJ Properly Weighed The Medical Opinions (Issue One).**

In Issue One, Plaintiff raises various arguments challenging the ALJ's assessments of the medical opinion evidence and his subjective pain testimony. (Joint Stip. at 4-10, 15-17.) The Court's analysis of Issue One focuses primarily on the ALJ's assessment of the medical opinion evidence. To the extent that Plaintiff raises any arguments that go solely to the ALJ's assessment of his subjective symptom testimony, they are addressed below in the Court's analysis of Issue Two.

A. **Legal Standard.**

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Treating physician opinions should be given more weight than examining or nonexamining physician opinions. *Orn*, 495 F.3d at 632. This is because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record." *Orn*, 495 F.3d at 632. If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record." *Id*. Similarly, an ALJ must satisfy the clear and convincing reasons standard to reject an uncontradicted examining physician's opinion or satisfy the specific and legitimate reasons standard to reject a contradicted examining physician's opinion. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). Finally, the opinion of a non-treating or non-examining

physician may serve as substantial evidence when it is consistent with independent clinical findings or other evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

**B.     Analysis.**

Plaintiff challenges the ALJ's assessments of his alleged physical and mental impairments. The Court considers each set of claims in turn.

**1.     Physical Impairments.**

Plaintiff's challenge to the ALJ's assessment of his physical impairments appear to be based on opinions or treatment rendered by Dr. Newton (an examining physician), Dr. Ganjianpour (a treating physician), and various treating physicians at Kaiser Permanante.

**a.     Dr. Newton (examining physician).**

In April 2015, Dr. Newton examined Plaintiff as part of a worker's compensation proceeding. (AR 2623-58.) As part of the examination, Plaintiff stated that he began experiencing pain in his lower back in December 2005, which he attributed to his work-related duties. (AR 2625.) In January 2006, Plaintiff underwent a lumbar spine microdiscectomy. (AR 2626.) In August 2006, he was involved in a car accident that aggravated his back pain. (AR 2627.) In July 2013, he was terminated from his job. (AR 2628.) In this action, Plaintiff alleged disability beginning on July 3, 2013. (AR 12.)

In pertinent part, Dr. Newton observed that Plaintiff displayed positive Waddell's signs, which indicated "spinal pain of non-organic origin." (AR 2645.) Dr. Newton also observed that Plaintiff was using a wheelchair but commented that the objective findings did not support

a wheelchair. (AR 2654.) Dr. Newton also commented that Plaintiff's "subjective complaints of ongoing moderate-to-severe low back pain are inconsistent with the fact that he worked in his regular capacity until he was terminated." (*Id*.) Ultimately, however, Dr. Newton concluded that Plaintiff should be limited to "[n]o heavy lifting (15 pounds)." (AR 2656.)

The ALJ found Dr. Newton's conclusion about lifting to be ambiguous but construed it favorably to Plaintiff as an opinion that he should be restricted from lifting more than 15 pounds. (AR 24 n.11.) Nonetheless, the ALJ rejected Dr. Newton's opinion in this regard for several reasons, including Plaintiff's own hearing testimony that he can lift a wheelchair weighing "just under" 20 pounds. (AR 24; *see also* AR 46.) Plaintiff contends that the ALJ erred in relying on this reason because Plaintiff was able to lift the wheelchair only infrequently and with difficulty. (Joint Stip. at 7; *see also* AR 46.) To the contrary, the ALJ could have reasonably inferred that Plaintiff's ability to lift a 20-pound wheelchair, even occasionally and with difficulty, was inconsistent with a limitation to lifting 15 pounds. *See Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

However, even assuming for purposes of argument that Plaintiff is correct in identifying error in the ALJ's reliance on the wheelchair lifting, the error would be harmless. The ALJ stated other independent reasons to reject Dr. Newton's 15-pound lifting limitation, none of which Plaintiff challenges. First, the ALJ found that electrodiagnostic testing did not reveal any significant abnormalities. (AR 24; *see also* AR 2653.) Second, the ALJ found that Dr. Newton's own examination findings did not support a specific finding that Plaintiff is limited to 15 pounds as opposed to 20 pounds (consistent with the ALJ's residual functional capacity determination for light work). (AR 24; *see also* 2636-45.) The ALJ further commented that the difference between 15 pounds and 20 pounds is "fairly negligible." (AR 24.) Third, the ALJ found that Dr. Newton himself made certain findings consistent with an ability to lift 20

7

pounds: "positive Waddell's signs as well as subjective symptoms that are not supported by objective findings." (*Id.*; *see also* AR 2645, 2654.) These reasons, even setting aside the allegedly invalid reason involving Plaintiff's ability to lift the wheelchair, would be legally sufficient to reject Dr. Newton's 15-pound lifting limitation. *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (holding that an ALJ permissibly rejected an examining physician's opinion where it was inconsistent with examination findings); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (same).

b. **Dr. Ganjianpour (treating physician).**

In December 2015, Dr. Ganjianpour issued a report following Dr. Newton's examination. (AR 2688-90.) In pertinent part, Dr. Ganjianpour reviewed Dr. Newton's conclusion that Plaintiff should be limited to "[n]o heavy lifting (15 pounds)" (AR 2656), and then interpreted it to mean that Plaintiff should be "precluded from heaving lifting of 50 pounds" (AR 2689).[3] Otherwise, Dr. Ganjianpour recommended that Plaintiff see a pain management physician, a psychologist, and a psychiatrist. (AR 2690.) Dr. Ganjianpour requested pool therapy, acupuncture, and "further conservative care to manage his symptoms." (*Id.*) Dr. Ganjianpour also commented that "aggressive treatment in the form of surgery . . . should be given to him as part of his future care." (*Id.*)

Plaintiff contends that the ALJ erred by failing to discuss Dr. Ganjianpour's report other than briefly mention it in a footnote. (Joint Stip. at 6; *see also* AR 24 n.11.) However, the ALJ's duty to discuss Dr. Ganjianpour's report was limited because Dr. Ganjianpour did not offer any significant and probative evidence about Plaintiff's functional limitations. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (*per curiam*) (recognizing that an

---

[3] As noted, the ALJ interpreted Dr. Newton's conclusion more favorably to Plaintiff as an opinion that Plaintiff should be restricted from lifting more than 15 pounds. (AR 24 n.11.)

8

ALJ is required to discuss only evidence that is significant and probative and holding that a treating physician's report was not significant and probative). Indeed, nothing in Dr. Ganjianpour's report was inconsistent with any of the ALJ's ultimate findings about Plaintiff's functional abilities. *See Houghton v. Commissioner Social Sec. Admin.*, 493 F. App'x 843, 845-46 (9th Cir. 2012) ("The ALJ was not required to discuss these alleged medical conditions in the absence of significant probative evidence that they had some functional impact on Houghton's ability to work."). Thus, the ALJ did not err under these circumstances by failing to discuss Dr. Ganjianpour's report in more detail.

### c. Treatment at Kaiser Permanente.

Although Plaintiff does not specify the opinions of any particular physicians at Kaiser Permanente as part of Issue One, he does appear to raise some arguments, briefly and in passing, about the ALJ's assessment of the Kaiser Permanente medical evidence. (Joint Stip. at 7-8.) As noted above, to the extent that any of these arguments go to the issue of Plaintiff's subjective symptom testimony, they are discussed below in Issue Two.

First, Plaintiff argues that the ALJ "raised concerns that he failed to address at the hearing but relied on in finding Plaintiff was not disabled." (Joint Stip. at 8.) Plaintiff appears to be arguing that the ALJ complained about a lack of records prior to the alleged onset date of July 2013 but failed to address it. (*Id.*) To the extent that Plaintiff is arguing that the ALJ should have developed the record with evidence dating before the alleged onset date of July 2013, the Court disagrees. Such evidence would have been of limited relevance. *See Carmickle*, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance."); *see also Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1998) (concluding that an ALJ could properly reject medical evidence that predated the relevant time period).

Second, Plaintiff argues that the ALJ improperly relied on Plaintiff's refusal of a pain management class in 2017 and his prior use of opioids, without inquiring "about the evolution of Plaintiff's pain management protocols, which involved a number of changes in medication." (Joint Stip. at 8.) But Plaintiff has not specified any instance in which the ALJ made a finding adverse to Plaintiff based on his refusal of a pain management class or prior opioid use. Rather, the ALJ noted these facts during a lengthy, detailed summary of the medical evidence. (AR 18-24.) To the extent that Plaintiff alleges that the ALJ's summary was deficient because it should have included a broader discussion of "the evolution of Plaintiff's pain management protocols," he has not shown legal error, particularly since it is not apparent how such a discussion would have been relevant to any of the ALJ's findings. Moreover, the ALJ summary of the medical evidence is six pages long, detailed, and adequate for the Court to determine the foundations of the ALJ's findings. (AR 18-24.) Additional discussion under these circumstances was not required. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding an ALJ's four-page summary of the medical evidence sufficient and commenting that to require more "would unduly burden the social security disability process") (citation omitted).

Finally, Plaintiff argues that the ALJ should have allowed Plaintiff the opportunity to cross-examine the state agency physicians in this case. (Joint Stip. at 8.) "A claimant in a disability hearing is not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts." *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988) (citing *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983)). Plaintiff's claim fails, however, because the record contains no evidence that he asked the ALJ for an opportunity to cross-examine the state agency physicians. *See Richardson v. Perales*, 402 U.S. 389, 404 (1971) ("Although the claimant complains of the lack of opportunity to cross-examine the reporting physicians, he did not take advantage of the opportunity afforded him . . . to request subpoenas for the physicians."). This inaction on

Plaintiff's part precludes him "from now complaining that he was denied the rights of confrontation and cross-examination." *See id.* at 405.

### 2. Mental Impairments.

At Step Two, the ALJ found that Plaintiff did not have a severe mental impairment. (AR 14-17.) Plaintiff's challenge to the ALJ's assessment of his alleged mental impairments involve the opinions of Dr. Levy (a treating psychologist), and Dr. Payne-Gair (a state agency non-examining psychologist).

#### a. Dr. Levy (treating psychologist).

Dr. Levy initially evaluated Plaintiff in April 2014. (AR 618.) Plaintiff had complained of "depressed mood and anxiety stemming from chronic pain from spinal disk problems." (*Id.*) After conducting a mental status examination, Dr. Levy diagnosed major depression (moderate) and anxiety. (AR 620.) Dr. Levy also stated that Plaintiff had a "moderate" impairment in performing work/school tasks. (AR 621.) Dr. Levy recommended individual and group therapy. (*Id.*)

The ALJ discussed Dr. Levy's opinion as part of his determination at Step Two that Plaintiff did not have a "severe" mental impairment. (AR 15.) The ALJ first noted that Plaintiff did not seek any mental health treatment until April 2014, nine months after his alleged onset date of July 3, 2013. (*Id.*) The ALJ also noted that Dr. Levy's mental status examination revealed minimal findings: a mild impairment in concentration; an intact memory; an alert and oriented appearance; unimpaired impulse control and judgment; good insight; and a Global Assessment of Functioning score of 70-61, indicative of mild symptoms. (*Id.*; *see also* AR 620-21.) The ALJ also noted that Dr. Levy did not recommend medication management but only some therapy sessions. (AR 15; *see also* AR 621.)

Plaintiff contends that the ALJ failed to provide "specific, legitimate reasons" to reject Dr. Levy's opinion, particularly the portion of the opinion in which Plaintiff was found to have a "moderate" limitation in performing work/school tasks. (Joint Stip. at 9.) The Court disagrees. In the first place, a moderate limitation in performing work/school tasks was not necessarily inconsistent with the ALJ's determination that Plaintiff's mental impairments were non-severe. *See Koehler v. Astrue*, 283 F. App'x 443, 445 (9th Cir. 2008) ("The regulatory scheme . . . does not mandate that the diagnosis of a 'moderate' degree of limitation in one's ability to respond to changes in the workplace setting must be found to be a 'severe' mental impairment.").

In any event, even assuming for purposes of argument that Dr. Levy's opinion was in any manner inconsistent with the ALJ's findings at Step Two, the Court has a reasonable basis to discern why the ALJ did not credit that portion of Dr. Levy's opinion. *See Molina*, 674 F.3d at 1121 ("Even when an agency 'explains its decision with 'less than ideal clarity,' we must uphold it 'if the agency's path may reasonably be discerned.'") (citation omitted); *see also Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (recognizing that a reviewing court may infer why an ALJ rejected a medical opinion "if those inferences are there to be drawn" from the ALJ's specific findings about the medical evidence). The ALJ could have permissibly rejected Dr. Levy's opinion about Plaintiff's moderate limitation because the ALJ found it inconsistent with the minimal findings from Dr. Levy's mental status examination, as discussed above. *See, e.g., Connett*, 340 F.3d at 875 (holding that an ALJ may reject a treating physician's opinion based on lack of support by treatment notes and evaluations). Thus, the ALJ did not err in assessing the treating psychologist's records.

### b. Dr. Payne-Gair (state agency psychologist).

The ALJ ultimately gave "great weight" to the opinion of Dr. Payne-Gair, a state agency psychologist. (AR 15.) Upon review of Plaintiff's medical records, including his mental status

12

examinations, Dr. Payne-Gair recommended that Plaintiff's mental condition be rated as non-severe. (AR 100.)

Plaintiff contends that the ALJ had no basis to rely on Dr. Payne-Gair's opinion. (Joint Stip. at 10.) To the contrary, Dr. Payne-Gair's opinion served as substantial evidence because it was consistent with independent clinical findings or other evidence in the record. *See Thomas*, 278 F.3d at 957. The clinical findings from Plaintiff's mental status examinations, which Dr. Payne-Gair reviewed, indicated only mild findings. (AR 99-100.) Thus, the ALJ reasonably could have relied on Dr. Payne-Gair's opinion as substantial evidence to conclude that Plaintiff did not have a severe mental impairment.

### C. Conclusion.

In sum, Plaintiff has not demonstrated that the ALJ's assessments of the medical opinion evidence regarding his physical and mental allegations were legally erroneous or unsupported by substantial evidence. Accordingly, Issue One does not warrant reversal.

## II. The ALJ Properly Assessed Plaintiff's Subjective Symptom Testimony (Issue Two).

In Issue Two, Plaintiff claims that the ALJ's assessment of Plaintiff's subjective symptom testimony was inadequate. (Joint Stip. at 17-21, 25-26.)

### A. Legal Standard.

An ALJ must make two findings in assessing a claimant's pain or symptom allegations. Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *3; *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine

13

whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*, 775 F.3d at 1102 (citation omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

Effective March 28, 2016, SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3P, 2017 WL 5180304, at *1. Because the ALJ's decision in this case was issued on June 16, 2017, it is governed by SSR 16-3P. *See id.* at *13 and n.27. In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2; *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). These changes are largely stylistic and are consistent in substance with Ninth Circuit precedent that existed before the effective date of SSR16-3P. *See Trevizo*, 871 F.3d at 678 n.5.

**B.      Background.**

Plaintiff testified at the administrative hearing as follows about his limitations:

Plaintiff drove to the hearing. (AR 45.) He uses a wheelchair that weighs "just under" 20 pounds. (AR 45-46.) He loads the wheelchair into his car trunk, but "it's a struggle." (AR 46.) No doctor prescribed the wheelchair, but his treating physician, Dr. Martin, recommended it. (AR 66-67.) Plaintiff last worked in July 2013 as a senior product manager for an interior design company. (AR 47-48.) He stopped working because his "injuries and pain had worsened to the degrees that [he] could not function." (AR 52.)

Plaintiff can type for 10 minutes at a time. (AR 55.) He is mostly home-bound. (AR 56.) He purchased a house with a swimming pool that he uses for therapy. (*Id*.) He can walk for less than two hours, in increments of five to ten minutes. (AR 57.) His pain medications cause side effects that include lack of sleep, difficulty with concentration, and constipation. (AR 58.)

He experiences depression, anxiety, panic attacks, and excessive sweating. (AR 61.) He has "very big mood swings every day." (AR 62.) The mood swings lead to arguments with his wife. (AR 63.)

**C.  Analysis.**

The ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 26.) However, the ALJ next found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id*.) As support, the ALJ stated five reasons. (AR 26-27.)

First, the ALJ stated that "the objective medical evidence does not support the limiting effects of the alleged symptoms." (AR 26.) The ALJ explained that "medical records do not document marked or continued neurological deficits, continued restrictions in joint motion,

positive straight-leg raising tests on a consistent basis, atrophy other than in the left calf, abnormal electrodiagnostic test results, or other physical abnormalities" consistent with Plaintiff's statements. (*Id.*) The ALJ's earlier, extensive summary of the medical evidence includes findings from the record that support this reason. (*See* AR 18-24 [citing AR 2644 (normal neurological exam); AR 812 (normal joint motion); AR 677, 811 (normal straight-leg raising test); AR 753 (atrophy in left calf); AR 2653, 2697 (normal electrodiagnostic tests)].) Although Plaintiff argues that the ALJ's finding of left leg atrophy failed to account for evidence that Plaintiff lost 40 pounds and experienced increased weakness due to inactivity (Joint Stip. at 7), this argument does not address the entirety of the objective medical findings that the ALJ relied upon, such as the normal test results in various areas of functioning. In that circumstance, it is not the province of the Court to reweigh the evidence. *See Bowman v. Heckler*, 706 F.2d 564, 566 (9th Cir. 1988) (reviewing courts do not reweigh the ALJ's assessment of the evidence); *Orn*, 495 F.3d at 630 (recognizing that where the evidence is susceptible to more than one rational interpretation, the ALJ's interpretation should be upheld). Thus, this was a factor that the ALJ permissibly considered in discounting Plaintiff's subjective symptom allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot for the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Second, the ALJ stated that "despite allegations of debilitating pain and the need to use a wheelchair or cane/walker, as indicated above, the medical opinions of record do not confirm that [Plaintiff] has any restrictions in his ability to stand, sit or walk, contrary to the allegations of [Plaintiff]." (AR 26.) As an example, the ALJ noted that Dr. Newton "even specifically indicated that there is no objective basis for [Plaintiff's] use of a wheelchair." (*Id.*; *see also*

AR 2654.) The Court concurs that the record fails to show that any physician endorsed Plaintiff's allegations about his restricted ability to walk or his need to use a wheelchair. Although Plaintiff points out that several physicians observed Plaintiff use a wheelchair (Joint Stip. at 20), and although Plaintiff testified (without corroboration) that he received a recommendation for a wheelchair from his treating physician, Dr. Martin (AR 66), this evidence did not render the ALJ's reasoning erroneous. The ALJ accurately found that the record contained no opinion or statement from any physician, including Dr. Martin, imposing restrictions on Plaintiff's ability to walk or recommending the use of a wheelchair. Thus, this was a factor that the ALJ permissibly considered in assessing Plaintiff's subjective symptom allegations. *See Verduzco v. Apfel*, 188 F.3d 1087, 1088 (9th Cir. 1999) (finding an ALJ justified in rejecting a claimant's testimony where no doctor indicated he needed an assistive device to walk).

Third, the ALJ stated that "from October 2015 to May 2016, the medical record contains a gap in treatment" and that Plaintiff had failed to give "any adequate explanation for his failure to seek ongoing treatment, during that period." (AR 26.) Upon review of the record, the Court concurs that the record shows an unexplained gap in treatment from October 2015 (AR 2487) to May 2016 (AR 2575). Although Plaintiff points out that the treatment gap "was not raised at the hearing, so Plaintiff had no opportunity to rebut it" (Joint Stip. at 20), the ALJ had no affirmative duty to raise the issue at the hearing so as to give Plaintiff an opportunity to explain the gap. Rather, the ALJ's only duty in this regard was to consider an explanation for a treatment gap if Plaintiff offered one. *See Merritt v. Colvin*, 572 F. App'x 468, 470 n.1 (9th Cir. 2014) (finding no affirmative duty by an ALJ to ask a claimant why he did not pursue regular medical treatment, rather than a duty to consider explanations if the claimant offers them). Because the record contained no such explanation, the treatment gap was a factor that the ALJ permissibly considered in assessing Plaintiff's subjective symptom allegations. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that a claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"

is a factor that "can cast doubt on the sincerity of the claimant's pain testimony"); *Marsh*, 792 F.3d at 1173 n.2 (holding that the ALJ properly rejected the claimant's symptom testimony in part because gaps existed in her treatment regimen); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that an ALJ may properly consider gaps in treatment in assessing a claimant's testimony).

Fourth, the ALJ stated that "the record contains statements about [Plaintiff's] activities of daily living, which are inconsistent with the allegations of constant, debilitating pain (7/10) requiring the use of a wheelchair." (AR 27.) As support, the ALJ relied on evidence that Plaintiff admitted he exercises 210 minutes per week (AR 2148), that he admitted he is able to lift a 20-pound wheelchair and put it in his car (AR 46), that in 2015 and 2016 he acknowledged swimming or working on his legs in the pool several times a week (AR 2460, 2575), and that he and his wife both admitted he drives a car (AR 45, 213). Although Plaintiff points out that the swimming was only therapeutic and not transferable to a work setting (Joint Stip. at 7-8), the ALJ reasonably found that evidence of swimming was inconsistent with Plaintiff's allegations of constant, debilitating pain, even if an activity such as therapeutic swimming does not necessarily transfer to a work setting. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) ("The ALJ recognized that this evidence [of daily activities] did not suggest Valentine could return to his old job . . . , but she thought it did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

Moreover, although Plaintiff points out that he lifts the wheelchair infrequently and with difficulty (Joint Stip. at 7, 20; *see also* AR 46), the ALJ could have reasonably inferred that Plaintiff's ability to lift a wheelchair, even occasionally and with difficulty, was inconsistent with allegations of constant, debilitating pain. *See Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). And even

assuming for purposes of argument that Plaintiff's ability to lift a wheelchair was not a convincing reason to reject his testimony because of his difficulties in performing that task, the ALJ's reference to that task would be harmless error given the other activities the ALJ identified — exercise, swimming, and driving — as inconsistent with Plaintiff's allegations of constant, debilitating pain. Thus, evidence on the whole of Plaintiff's daily activities was a factor that the ALJ permissibly considered in assessing Plaintiff's allegations about the severity of his limitations. *See Orn*, 495 F.3d at 639 (recognizing that an ALJ may find that a claimant's activities, as he described them, "contradict his other testimony").

Fifth, the ALJ stated that "despite allegations that his medications cause significant and debilitating side effects, repeatedly, as indicated above, medical records do not mention any type of side effects from [Plaintiff's] medications." (AR 27; *see also* AR 814.) The Court concurs that the record does not demonstrate significant side effects. Although Plaintiff points out that he was taking medications that would produce generally accepted side effects such as lack of concentration, drowsiness, and constipation (Joint Stip. at 20; *see also* AR 58), the medical record does not show Plaintiff suffered significant side effects. Thus, this was a factor the ALJ permissibly considered in assessing Plaintiff's subjective symptom allegations. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*per curiam*) (holding that an ALJ permissibly considered a lack of medication side effects in assessing a claimant's testimony).

In sum, the ALJ stated clear and convincing reasons based on substantial evidence to discount Plaintiff's subjective symptom allegations. Thus, this issue does not warrant reversal.

### III. The ALJ's Step Four Determination Was Not Inadequate (Issue Three).

In Issue Three, Plaintiff claims that the ALJ erred in relying on the vocational expert's testimony to conclude at Step Four that Plaintiff can perform his past relevant work as a senior project manager. (Joint Stip. at 26-28, 28-29.) Plaintiff's challenge to the evidentiary value

of the vocational expert's testimony is premised solely on the ALJ's allegedly erroneous assessment of the medical opinion evidence. (*Id*. at 27.) Because the Court has rejected that premise for the reasons discussed above in Issue One, it follows that this issue does not warrant reversal.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: July 12, 2019

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE